1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                            AT SEATTLE

8    RAMON SAUL SILVA,

9                              Petitioner,        Case No. C22-282-LK-MLP

10              v.

11   DONALD R. HOLBROOK,                          REPORT AND RECOMMENDATION

12                             Respondent.

13

14              I.      INTRODUCTION AND SUMMARY CONCLUSION

15          Petitioner Ramon Silva is a state prisoner who is currently confined at the Washington

16   State Penitentiary in Walla Walla, Washington. He has filed a petition for writ of habeas corpus

17   under 28 U.S.C. § 2254 seeking relief from his 2018 King County Superior Court judgment and

18   sentence. (Pet. (dkt. # 4).) Respondent filed an answer to the petition and submitted relevant

19   portions of the state court record. (Answer (dkt. # 13); State Court Rec. (dkt. ## 14, 14-1).)

20   Petitioner filed a response to Respondent's answer (Pet.'s Resp. (dkt. # 15)).

21          This Court, having reviewed the petition, all briefing of the parties, and the balance of the

22   record, concludes that Petitioner's petition for writ of habeas corpus should be denied and this

23   action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.    FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying

Petitioner's convictions as follows:

> Silva was arrested and charged with second degree DV assault, and fourth degree DV assault. According to the charging documents, the second degree assault charge arose from an incident on January 2, 2018, when Silva accused his live-in girlfriend, Victoria Martinez, of cheating on him. Martinez stated that Silva bent her fingers and strangled her. The fourth degree assault charge arose from an incident on February 18, 2018, when Silva woke Martinez up and told her that he was having a mental breakdown. Martinez called 911 and reported that Silva had strangled her, and poked her in the eye after ranting, making no sense, and instructing her "don't look at me with those eyes." King County Sherriff Officers Tim MacDonald and Nathan Obregon responded. Martinez reported to the officers that Silva is schizophrenic, but he was not taking his medication and he was using marijuana, which aggravated his delusions. Martinez reported that Silva was talking about aliens and mind control. Deputy MacDonald observed Silva speaking about these issues and having an "obvious" mental health crisis.

> On August 1, 2018, Silva's appointed counsel moved to withdraw due to a conflict of interest that arose after the State disclosed its list of possible witnesses. Counsel also informed the trial court that Silva wished to proceed pro se. The trial court granted defense counsel's motion to withdraw, and denied Silva's motion without prejudice, stating that it wanted to give Silva the opportunity to discuss representing himself with new counsel.

> On August 3, 2018, Silva appeared in front of a new trial court judge for a hearing on his motion to proceed pro se. A new public defender was assigned to Silva that morning. Counsel moved to continue the trial and confirmed Silva wished to proceed pro se. The court asked Silva whether he previously represented himself and whether he had studied law. Silva responded that he had studied law as an inmate. He stated he was familiar with the rules of evidence and jury instructions, and that he was planning to waive a jury trial and proceed to a bench trial. The prosecutor raised a concern about whether Silva could "constitutionally proceed based on mental capacity." The court responded "you can be incompetent and proceed pro se. There's U.S. Supreme Court law on that . . . So I'm going to let him proceed pro se. He wants to represent himself, he's entitled to do that." After a break in proceedings, Silva asked for standby counsel, which the court denied. Silva then asked the court if the prosecutor had raised a competency issue. The court responded, "I'm not here to discuss competency. We're just talking about you proceeding representing yourself."

REPORT AND RECOMMENDATION
PAGE - 2

The hearing resumed later that same day with another new trial court judge presiding. Silva remarked on the change of judge, saying "I'm just making sure I didn't wake up." Due to the confusion of where the prior judge had left off, the new judge restarted proceedings from the beginning. When the court asked why Silva thought he could represent himself, Silva responded "I have a good understanding of the Criminal Rules and Procedure and with pro se status, I'll be able to utilize the WestLaw Legal Research station in the jail." He confirmed that even though he wanted standby counsel, he would still opt to proceed pro se if he was not granted standby counsel. After questioning Silva further about his knowledge of the legal system, the court found that he was making a knowing, intelligent, and voluntary waiver of his right to counsel. The court found that because there was no reason to doubt Silva's competency, the court would allow him to represent himself.

Silva then stated:

> I would just like to mention for the record that I'm being held in a psychiatric ward past the 72-hour observation period and nobody has spoken to me or anything. And earlier with the other Judge that was up here, the Prosecutor mentioned something about incompetency and when I brought it up, nobody wanted to speak about it.
>
> So I don't know what you can do about this, but this jail has me being—they're violating RCW 10.99 by even holding me past the 72-hour observation period with any type of anything. They haven't come spoken to me, they don't do anything. They haven't— they're not even feeding me food or giving me showers.

The court responded[,] "so if you have issues about what's going on in the jail, that is not something I can address." The court then signed Silva's waiver of counsel.

Although Silva initially stated an intention to plead guilty, on October 5, 2018, he indicated that he wanted to proceed to a bench trial. Trial began on October 17, 2018. The State presented trial testimony from Martinez, the responding Deputies MacDonald and Obregon, and Detective Eric White. The State also offered the 911 calls made by Silva and Martinez during the February 18 incident. Silva did not present evidence in his defense.

MacDonald testified that when he responded to the call, Silva "seemed to be having some sort of a mental health crisis. He was talking about mind control, aliens, people talking to him, and was just very strange." Obregon testified that based on his training as a psychotherapist, he was concerned that Silva might be experiencing dissociation.

REPORT AND RECOMMENDATION
PAGE - 3

1

2          Martinez testified that Silva had mental health issues, and that he stopped
    his treatment and was using marijuana, which made his paranoia worse. She said
3   he frequently talked about CIA agents and being recorded. In the 911 call, Martinez
    said that Silva was describing himself as having a psychotic break at the time of the
    incident and that he was constantly talking about being an alien and a reptile.

4          Silva's defense was to challenge Martinez's credibility and motives. The
    court found Martinez was a credible witness and that Silva suffered from mental
5   illness. The court found Silva guilty of both charges. At sentencing, Silva was irate
    and he made death threats, swore, and ranted. He demanded standby counsel before
6   the court signed the judgment and sentence. At a second sentencing hearing a week
    later, Silva had appointed standby counsel.

7
    (State Court Rec. (dkt. # 14-1), Ex. 7 at 1-5.)
8
           Petitioner appealed his convictions to the Washington Court of Appeals, and on April 20,
9
    2020, the Court of Appeals issued an unpublished opinion affirming the convictions. (*See* State
10
    Court Rec., Exs. 3-7.) Petitioner thereafter filed a petition for review in the Washington Supreme
11
    Court. (*Id.*, Ex. 10.) Petitioner identified therein the following seven issues for review:
12
           1.     After the State raised a concern about Silva's competency, did the
13   trial court then err by failing to order an evaluation and refusing to consider
     competency meaningfully?
14
           2.     Did the trial court err in hearing and granting Silva's motion to
15   proceed *pro se* and in finding his waiver of counsel "knowing, intelligent, and
     voluntary," before making an ill-informed determination as to Silva's competency?
16
           3.     In considering Silva's *pro se* request, did the trial court make a
17   factual err in concluding there was "no reason" to think Silva was not competent
     despite the prosecutor's request and the probable cause statement available to the
18   court?

19         4.     Similarly, did the trial court make a procedural error by noting Silva
     was "coming across as competent" despite the court's previous denial of the
20   opportunity for the parties to discuss competency?

21         5.     Did the trial court make a legal error by misapplying the appropriate
     legal standard by finding Silva's intellect sufficient without considering his ability
22   to comprehend the nature of the proceedings?

23

     REPORT AND RECOMMENDATION
     PAGE - 4

6.    Did defense counsel violate Silva's right to effective assistance of counsel by failing to object to the trial court's consideration of the motion to proceed *pro se* and asserting he believed the waiver of counsel was "knowing and intelligent" without any competency evaluation or meaningful hearing on the matter?

7.    Did the trial court further compound the error by failing to order a competency evaluation or hearing after the following occurred? … after Silva asked whether he had woken up, and twice raised competency concerns during the hearing on the motion to proceed *pro se*? … after trial witnesses raised concerns about Silva's mental health and ability to maintain a grasp on reality? … after Silva ranted during sentencing that he knew he was in a "simulation," the judge was "shimmering," and he knew this was not reality?

(*Id.*, Ex. 10 at 2-3.) The Supreme Court denied review without comment on December 2, 2020, and the Court of Appeals issued a mandate terminating direct review on February 12, 2021. (*Id.*, Exs. 11-12.)

On April 1, 2021, Petitioner filed a personal restraint petition in the Washington Court of Appeals in which he asserted that the sentencing guidelines under which he was sentenced were unconstitutional because they allowed the trial court to use prior felony convictions to increase the sentence for his current offense in violation of his rights under the Double Jeopardy Clause. (State Court Rec., Ex. 13.) The Court of Appeals dismissed the petition, concluding that Petitioner had failed to present an arguable basis for collateral relief. (*Id.*, Ex. 16.) Petitioner moved for discretionary review of the Court of Appeals' decision in the Washington Supreme Court, and the Supreme Court denied Petitioner's motion on February 23, 2022. (*Id.* Exs. 17-18.) The Court of Appeals issued a certificate of finality in Petitioner's personal restraint proceedings on June 3, 2022. (*Id.*, Ex. 19.) Petitioner now seeks federal habeas review of his state court convictions.

REPORT AND RECOMMENDATION
PAGE - 5

### III.    GROUNDS FOR RELIEF

Petitioner identifies two grounds for relief in his federal habeas petition which may be summarized as follows:

1.    Under the current sentencing guidelines, the trial judge was required to use past felony convictions as "points" to increase his current sentence, which violated double jeopardy.

2.    The trial court permitted Petitioner to represent himself even after the prosecutor raised a concern regarding Petitioner's competency during a pretrial hearing.

(Pet. at 5, 7.)

### IV.    DISCUSSION

Respondent concedes that Petitioner properly exhausted his claims for federal habeas relief because he fairly presented the claims to the Washington Court of Appeals and the Washington Supreme Court as federal claims. (Answer at 8.) Respondent argues, however, that Petitioner is not entitled to relief with respect to either of the claims asserted in his petition. (*See id*. at 14-19.)

#### A.    Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

REPORT AND RECOMMENDATION
PAGE - 6

1    Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

2    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

3    or if the state court decides a case differently than the Supreme Court has on a set of materially

4    indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

5    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

6    court identifies the correct governing legal principle from the Supreme Court's decisions, but

7    unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

8    The Supreme Court has made clear that a state court's decision may be overturned only if

9    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

10   The Supreme Court has also explained that "[a] state court's determination that a claim lacks

11   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

12   correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing

13   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

14   Clearly established federal law means "the governing legal principle or principles set

15   forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

16   at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

17   legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

18   to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

19   952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

20   In considering a habeas petition, this Court's review "is limited to the record that was

21   before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

22   170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

23

REPORT AND RECOMMENDATION
PAGE - 7

1    state court, such determination shall be presumed correct, and the applicant has the burden of

2    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

3    § 2254(e)(1).

4        **B.    Analysis**

5            *1.    Double Jeopardy Claim (Ground One)*

6        Petitioner asserts in his first ground for relief that the trial court, in accordance with the

7    Washington sentencing guidelines, was forced to use his prior felony convictions as a basis for

8    imposing a longer sentence for his current offense, which Petitioner claims violated his double

9    jeopardy rights. (Pet. at 5.)

10        The Fifth Amendment to the United States Constitution guarantees that no person shall

11    "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend.

12    V. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for

13    the same offense after conviction, a second prosecution for the same offense after acquittal, and

14    multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing

15    *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The Supreme Court has expressly declined

16    to construe sentence enhancements as additional punishment, explaining that an enhanced

17    sentence imposed on a persistent offender "is not to be viewed as either a new jeopardy or

18    additional penalty for the earlier crimes" but as "a stiffened penalty for the latest crime, which is

19    considered to be an aggravated offense because a repetitive one." *See Gryger v. Burke*, 334 U.S.

20    728, 732 (1948); *see also Moore v. Missouri*, 159 U.S. 673, 678, (1895) ("[T]he State may

21    undoubtedly provide that persons who have been before convicted of crime may suffer severer

22    punishment for subsequent offences than for a first offence.").

23

REPORT AND RECOMMENDATION
PAGE - 8

The Washington Court of Appeals rejected Petitioner's double jeopardy claim on

collateral review of his convictions. The Court explained its conclusion as follows:

> Without any citation to the record or legal authority, Silva claims that the
> Sentencing Reform Act violates double jeopardy because it allows trial courts
> to use an offender's criminal history when imposing new sentences. He does not
> identify which of his prior convictions he deems it was unconstitutional for the trial
> court to consider. Moreover, he fails to recognize, and the State fails to note, that
> the U.S. Supreme Court and this court have already rejected the claim that longer
> sentences imposed as a result of prior convictions violate double jeopardy
> protections.
>
> In *McDonald v. Commonwealth of Massachusetts*, the court held that a prior
> conviction enhancement did not constitute a second punishment for the earlier
> offense, but rather the existence of the former conviction amplified the seriousness
> of the current offense thus justifying a more extreme sentence. 180 U.S. 311, 312,
> 21 S. Ct. 389, 45 L. Ed. 542 (1901); *State v. Wheeler*, 14 Wn. App.2d 571, 578, 474
> P.3d 583 (2020) ("Double jeopardy rights do not prohibit courts from considering
> criminal history for purposes of deciding an appropriate sentence or imposing
> sentencing enhancements, because that does not penalize the offender for that same
> earlier crime twice.") There is no double jeopardy violation when a trial court
> "treats a repeat offense more seriously than a first offense with a more serious
> penalty." *Wheeler*, 14 Wn. App.2d at 578.

(State Court Rec., Ex. 16 at 2.)

Petitioner makes no showing that this decision of the Washington appellate court is

contrary to, or constitutes an unreasonable application of, United States Supreme Court

precedent. Pursuant to Washington law, when an individual is convicted of a felony offense, a

sentencing judge is required to impose a standard range sentence which is based upon an

individual's offender score and the seriousness score of the offense of conviction. RCW

9.94A.505(2)(a)(i); RCW 9.94A.510; RCW 9.94A.530(1). An individual's offender score is

derived from prior criminal convictions. *See* RCW 9.94A.525. Petitioner was sentenced in

accordance with Washington law, and as the Court of Appeals properly noted, the U.S. Supreme

Court has long held that the use of prior convictions to enhance a current sentence does not

REPORT AND RECOMMENDATION
PAGE - 9

1  violate double jeopardy principles. (*See* State Court Rec., Ex. 16 at 2 (citing *McDonald*, 180 U.S.

2  at 312).) Petitioner's federal habeas petition should therefore be denied with respect to his first

3  ground for relief.

4          2.      *Competency (Ground Two)*

5          Petitioner appears to assert in his second ground for relief that the trial court improperly

6  permitted him to represent himself when he was incompetent to do so. (Pet. at 7.) Petitioner, in

7  support of this claim, points to the fact that during a pretrial hearing on his motion to proceed *pro*

8  *se*, the prosecutor raised a concern regarding Petitioner's competency and the judge presiding

9  over the hearing dismissed the prosecutor's concern and then refused to discuss the competency

10  issue further when Petitioner inquired about it later in the hearing.[1] (*See id.*; *see also* State Court

11  Rec., Ex. 20 at 15, 21.)

12          It is well established that a criminal defendant cannot be tried unless he is competent.

13  *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378

14  (1966)). The Supreme Court has held that the standard for determining competence to stand trial

15  is "whether the defendant has 'sufficient present ability to consult with his lawyer with a

16  reasonable degree of rational understanding' and has 'a rational as well as factual understanding

17  of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). The

18  standard of competency for waiving the right to counsel is the same as the standard of

19  competency for standing trial. *Id.* at 399-400. Thus, in order to be competent to represent

20  himself, a defendant must simply have a "rational understanding" of the proceedings. *See id.* at

21  397-98.

22  _____

23  [1] On direct appeal, Petitioner's counsel cited a more expansive list of reasons why the trial court should
have doubted Petitioner's competency. (*See* State Court Rec., Ex. 3 at 27-40.)

REPORT AND RECOMMENDATION
PAGE - 10

The Supreme Court has made clear that a state's "failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). A state trial judge must conduct a competency hearing whenever the evidence before him raises a *bona fide* doubt about the defendant's competence to stand trial. *Williams v. Woodford*, 384 F.3d 567, 603-04 (9th Cir. 2004); *Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001). "A bona fide doubt exists if there is substantial evidence of incompetence, or substantial evidence that the defendant lacks sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him." *Williams*, 384 F.3d at 604 (internal quotations and citations omitted).

The Washington Court of Appeals rejected Petitioner's competency claim on direct appeal. (*See* State Court Rec., Ex. 7.) The Court of Appeals explained its conclusion as follows:

> Silva argues that the trial court violated his constitutional rights by allowing him to proceed pro se through trial without ordering a competency evaluation sua sponte. We disagree.
>
> The due process clause of the Fourteenth Amendment "prohibits the conviction of a person who is not competent to stand trial." *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 861, 16 P.3d 610 (2001) (citing *Drope v. Missouri*, 420 U.S. 163, 171, 95 S. Ct. 896, 43 L. Ed. 103 (1975)); U.S. Const., Amend. XIV. Washington law provides greater protection than federal law by specifying that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." *Fleming*, 142 Wn.2d at 862; RCW 10.77.050. The Washington test for competency is whether (1) the defendant understands the charges against him and (2) the defendant is capable of assisting in his defense. *Fleming*, 142 Wn.2d at 861.
>
> The trial court has wide discretion in judging the mental capacity of a defendant to stand trial and in deciding whether a competency evaluation should be ordered. *Fleming*, 142 Wn.2d at 863. RCW 10.77.060 provides that when there is a reason to doubt the defendant's competency, the court shall move to evaluate the competency of the defendant. The court must make the threshold determination that there is a reason to doubt competency before it is required to evaluate the

REPORT AND RECOMMENDATION
PAGE - 11

defendant's competency. *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985). A reason to doubt the competency of the defendant rests in the discretion in [sic] the trial judge. *City of Gordon* [sic], 39 Wn. App. at 441. When making this determination, the court may consider the "defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." *State v. Ortiz-Abrego*, 187 Wn.2d 394, 404, 387 P.3d 638 (2017).

We defer to the trial court's judgment of a defendant's mental competency on review and will only reverse upon a finding of abuse of discretion. *State v. Coley*, 180 Wn.2d 543, 551, 326 P.3d 702 (2014).

. . . .

Silva contends that the court abused its discretion because it was confronted with "multiple reasons to doubt Silva's competency" as raised by the prosecutor, Silva, and the certification of probable cause. Silva argues that the court was first put on notice about his incompetency when the prosecutor stated that she had concerns, and directed the court to the officer statement in the certification of probable cause—which detailed Silva's schizophrenia diagnosis, his delusions, his irrational behaviors, and his beliefs. Silva argues that when he asked about a competency issue at the August 3, 2018, hearing about proceeding pro se, the court should have addressed his competency. He contends that defense counsel's evaluation of competency that day was not reliable because his new counsel had only been appointed to his case that morning and therefore was not familiar with Silva's mental state. He also argues that his reference to time in the psychiatric ward also put the court on notice. Silva claims that the testimony about his mental health and delusions at trial was yet another indication of his lack of competency. Finally, he argues that his erratic behavior at sentencing demonstrated that his competency was in question.

The record supports the State's argument that there was no reason to doubt Silva's competency throughout proceedings. Because the trial court had no reason to doubt Silva's competence, it did not abuse its discretion by not ordering a competency evaluation. Although Silva indisputably has mental health issues, the record does not indicate that these issues rose to the level of incompetency. Nothing about Silva's appearance, conduct, or demeanor gave the trial court reason to doubt Silva's competency. Silva was able to represent himself through trial successfully and make a proficient argument in his defense. Silva's reliance on the facts of the incidents that led to his charges is ultimately unpersuasive because these facts are not demonstrative of his conduct at trial. At the time of the incidents, Silva was off his medications, using marijuana, and undergoing a self-described psychotic break. By the time that Silva began court proceedings, he gave no signs nor exhibited any behaviors to questions [sic] his ability to understand the proceedings or ability to represent himself. . . . Silva exhibited no irrational behavior or conduct that would

REPORT AND RECOMMENDATION
PAGE - 12

alert the court that a competency hearing was necessary. Because there was no reason to doubt Silva's competence, the trial court did not abuse its discretion.

(*Id*. at 5-8.)

Petitioner makes no showing that this decision of the Washington appellate court is contrary to, or constitutes an unreasonable application of, United States Supreme Court precedent, or that the decision is based upon an unreasonable determination of the facts. As noted above, Petitioner's argument to the state courts on direct appeal was more expansive than the argument presented in his federal habeas petition. Petitioner focuses here on the fact that the prosecutor, during the course of a pretrial hearing on Petitioner's motion to proceed *pro se*, raised a concern regarding Petitioner's mental capacity. (State Court Rec., Ex. 20 at 15.) The judge presiding over that hearing responded, "[s]o you can be incompetent and proceed pro se. There's U.S. Supreme Court law on that."[2] (*Id*.) The judge then refused to address the competency issue further when Petitioner inquired about it later in the proceeding. (*Id*.) However, this judge ultimately did not issue the final ruling on Petitioner's motion to proceed *pro se*.

Following a break in the proceedings during which Petitioner reviewed some paperwork with his appointed counsel, a new judge took up Petitioner's motion to proceed *pro se*. This judge conducted a thorough colloquy and concluded Petitioner was making a knowing, voluntary, and intelligent waiver of his right to counsel. (State Court Rec., Ex. 20 at 33.) The judge went on to note that "I have no reason to think you're not competent and you're coming across as competent." (*Id*.)

---

[2] This Court has found no such Supreme Court case law.

REPORT AND RECOMMENDATION
PAGE - 13

1      The fact that the initial judge to consider Petitioner's motion to proceed *pro se* was

2  somewhat dismissive of any competency concerns is in no way dispositive of the issue before

3  this Court. Notably, the prosecutor, in expressing concerns regarding Petitioner's competency,

4  appeared to be referencing Petitioner's behavior at the time his crimes were committed, several

5  months before the competency issue was raised. There is no indication in the record that during

6  those intervening months, while charges were pending and Petitioner was represented by

7  counsel, that counsel raised any competency concerns. Following the hearing at which he was

8  granted *pro se* status, Petitioner appeared for additional pretrial hearings and trial, and the

9  transcripts of those proceedings confirm that Petitioner comported himself well throughout the

10  proceedings and did not exhibit any behaviors that raised a *bona fide* doubt about his ability to

11  understand the proceedings or to represent himself. (State Court Rec., Exs. 20 at 37-200, 21 at

12  1-91.)

13      It was not until after the trial judge rendered her verdict on the charges that Petitioner's

14  behavior became somewhat erratic. Specifically, on the date of Petitioner's sentencing hearing,

15  which was also the time scheduled for entry of the trial court's findings on the bench trial,

16  Petitioner refused to come to court. (State Court Rec., Ex. 21 at 94.) Petitioner later appeared

17  after the court entered an order requiring that jail officers bring him to court through the use of

18  reasonable force if necessary. (*Id*. at 94-96.) Petitioner, however, refused to participate in the

19  proceedings as the court entered findings and imposed sentence. (*See id*. at 97-106.) Petitioner

20  finally spoke up as the court was advising him of his appeal rights, and he began ranting about

21  the proceedings, in a sometimes non-sensical way, expressing his displeasure about the outcome

22  of the trial. (*See id*. at 107-115.)

23

REPORT AND RECOMMENDATION
PAGE - 14

At the point that the court indicated it was prepared to sign the sentencing documents, Petitioner objected, stating that "we need counsel." (State Court Rec., Ex. 21 at 112.) The court indicated it would contact the Department of Public Defense for assignment of counsel on appeal, and that they could revisit the just completed hearing with counsel if necessary. (*Id*. at 112-13.) A week later, the parties appeared for a follow-up hearing. (*Id*. at 118-123.) Petitioner appeared with newly appointed counsel, and counsel advised the court that Petitioner had directed him to file a notice of appeal upon entry of the judgment and sentence. (*Id*. at 119-120.)

As the appellate court noted, Petitioner indisputably has mental health issues (State Court Rec., Ex. 7 at 70), and Petitioner's outburst at the sentencing hearing was likely reflective of some of those issues. However, Petitioner's post-trial and post-sentencing behavior does not demonstrate that Petitioner lacked the necessary competence to stand trial and to represent himself in those proceedings. It is notable that when counsel was appointed for Petitioner, at Petitioner's request following the imposition of sentence, and then appeared with Petitioner at a subsequent hearing, no request was made to reopen the sentencing hearing or to challenge Petitioner's competency.

In sum, the Court of Appeal applied the proper standard in evaluating Petitioner's competency claim and reasonably concluded that the trial court did not err in allowing Petitioner to proceed through trial, *pro se*, without ordering a competency hearing. Petitioner has established no violation of his due process right to a fair trial and his second ground for federal habeas relief should therefore be denied.

## C.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

REPORT AND RECOMMENDATION
PAGE - 15

district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to either of the claims asserted in his petition.

## V.    CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 21, 2022**.

DATED this 23rd day of September, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16