UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAMON SAUL SILVA, | CASE NO. 2:22-cv-00282-LK |
| Petitioner, | ORDER ADOPTING REPORT AND RECOMMENDATION AND OVERRULING OBJECTIONS |
| v. | |
| DONALD HOLBROOK, | |
| Respondent. | |

This matter comes before the Court on Petitioner Ramon Saul Silva's Petition for Writ of Habeas Corpus, Dkt. No. 4, his motion for appointment of counsel, Dkt. No. 20, the order of United States Magistrate Judge Michelle L. Peterson denying the motion for appointment of counsel, Dkt. No. 22, her Report and Recommendation recommending denying the petition for habeas corpus, Dkt. No. 25, and Mr. Silva's objections to both, Dkt. Nos. 24, 26. Having reviewed the Report and Recommendation, the objections, and the balance of the record, the Court adopts the Report and Recommendation and overrules the objections as set forth below.

## I.    BACKGROUND

In March 2022, Mr. Silva filed a Section 2254 petition for a writ of habeas corpus seeking relief from his 2018 convictions for domestic violence assault in the second and fourth degrees. Dkt. No. 1; Dkt. No. 4 at 1. He alleged that the trial court violated his "double jeopardy rights" by using his "past felon[ies] as points at sentencing" to increase the length of his sentence. Dkt. No. 4 at 5. He further alleged that he was improperly allowed to represent himself even though he was incompetent. *Id.* at 7. Mr. Silva asks the Court to "reverse sentencing[,] order re-sentencing, [and] find [the] sentencing guidelines unconstitutional." *Id.* at 15.

In her Report and Recommendation, Judge Peterson recommended that the Court deny Mr. Silva's petition and dismiss this action with prejudice. Dkt. No. 25 at 16.  She also recommended denying a certificate of appealability. *Id.* at 15–16; *see* 28 U.S.C. § 2253(c).

With respect to Mr. Silva's claim that his double jeopardy rights were violated by the trial court's use of his prior felony convictions under Washington's sentencing guidelines as a basis for imposing a longer sentence, Dkt. No. 4 at 5, Judge Peterson explained that under Supreme Court precedent, sentence enhancements based on prior convictions do not violate the double jeopardy clause. Dkt. No. 25 at 9–10. Therefore, the Washington State Court of Appeals' rejection of Mr. Silva's double jeopardy claim on collateral review of his convictions was consistent with the Supreme Court's holding that "an enhanced sentence imposed on a persistent offender 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" Dkt. No. 25 at 8–10 (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)).

With respect to Mr. Silva's argument that the trial court improperly permitted him to represent himself when he was not competent, Dkt. No. 4 at 7, Judge Peterson explained that although the first judge hearing Mr. Silva's motion to proceed *pro se* may have made an incorrect

1  statement of the law, a new judge took up that motion, restarted the hearing from the beginning,

2  conducted a thorough colloquy with Mr. Silva, and concluded that he was making a knowing,

3  voluntary, and intelligent waiver of his right to counsel. *Id.* at 13. Judge Peterson concluded that

4  although Mr. Silva has mental health issues, "the Court of Appeal applied the proper standard in

5  evaluating [his] competency claim and reasonably concluded that the trial court did not err in

6  allowing [him] to proceed through trial, *pro se*, without ordering a competency hearing." *Id.* at 15;

7  *see also id.* at 10 (explaining that the standard applied to Mr. Silva's motion to proceed *pro se* is

8  the same as the standard for competency to stand trial: a defendant must have a "rational

9  understanding" of the proceedings) (quoting *Moran v. Godinez*, 509 U.S. 389, 397–98 (1993)).

10     Judge Peterson advised the parties that any objections to her Report and Recommendation

11 were due within 21 days. *Id.* at 16. Mr. Silva timely filed objections. Dkt. No. 26.

12                                    **II.    DISCUSSION**

13 **A.    Standard of Review**

14     The Court "shall make a de novo determination of those portions of the report or specified

15 proposed findings or recommendations to which objection is made," and "may accept, reject, or

16 modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

17 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part

18 of the magistrate judge's disposition that has been properly objected to."). As the statute and rule

19 suggest, the Court reviews findings and recommendations "*if objection is made*, but not

20 otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc)

21 (emphasis in original).

22 **B.    Double Jeopardy (Ground 1)**

23     In his objections, Mr. Silva asserts that he is not objecting to "a sentencing enhancement"

24 "but the sentencing guidelines that count past felon[ies] as points and thereby dictate what the

sentence will be whether or not the judge agrees with it." Dkt. No. 26 at 1. Mr. Silva appears to be arguing that Washington's sentencing guidelines relating to past felonies are unlawful because they are mandatory and "dictate" the sentence of an offender. Dkt. No. 26 at 1. *See also* Dkt. No. 14-1 at 184 ("The sentencing guidelines used to sentence me are unconstitutional. . . . Past felonys [sic] were used against me, I was subject to the same offense and twice put in jeopardy of life or limb in violation of the 5th Amendment.") (capitalization altered); *id.* at 240 (because "the use of the previous felony convictions were not discretionary but rather a requirement under the state sentencing guidelines . . . the court was forced to violate petitioner[']s double jeopardy rights"). This argument fails.

The legislature "has the power to define criminal punishments without giving the courts any sentencing discretion," *Chapman v. United States*, 500 U.S. 453, 467 (1991), and courts have not recognized a constitutional requirement for individualized sentences in non-capital cases, *United States v. Belgard*, 894 F.2d 1092, 1100 (9th Cir. 1990). *See also Ex parte United States*, 242 U.S. 27, 42 (1916) (It is "indisputable" that "the authority to define and fix the punishment for crime is legislative."); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990) ("[S]entencing is not inherently or exclusively a judicial function, and . . . due process is not offended by a guideline that narrows the discretion of a sentencing court.") (cleaned up); *United States v. Jones*, 530 F. App'x 747, 753 (10th Cir. 2013) ("[T]here is no constitutional right to an individualized sentence.") (cleaned up). Furthermore, although the Supreme Court held in *United States v. Booker* that mandatory guidelines that allow judges—rather than juries—to find facts that increase a defendant's sentence are unconstitutional, the Court expressly left intact its earlier conclusion that a sentence enhancement based on a judge-made finding of the "fact of prior conviction" did not offend the Sixth Amendment. 543 U.S. 220, 244 (2005) (reaffirming that "[a]ny fact *(other than a prior conviction)* which is necessary to support a sentence exceeding the maximum authorized by

the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt") (emphasis added). Finally, Mr. Silva has not alleged that the Washington State legislature lacked a rational basis for the sentencing guidelines at issue here. *See United States v. Stokes*, 292 F.3d 964, 966–67 (9th Cir. 2002) ("Where, as here, a statutory scheme does not burden the exercise of a fundamental right, we review a defendant's [constitutional] claim to determine only whether Congress had a rational basis for its actions.").

Nor has Mr. Silva stated a federal habeas claim by challenging his sentence enhancement based on his prior convictions. Judge Peterson concluded that the sentence enhancement did not violate the double jeopardy clause, Dkt. No. 25 at 9–10, and the Court agrees. *See, e.g.*, *Monge v. Cal*, 524 U.S. 721, 728 (1998) (explaining that enhanced sentences based on prior convictions do not violate the double jeopardy clause because they are not "additional punishment for the previous offense"); *State v. Wheeler*, 474 P.3d 583, 587 (2020) ("Double jeopardy rights do not prohibit courts from considering criminal history for purposes of deciding an appropriate sentence or imposing sentencing enhancements, because that does not penalize the offender for that same earlier crime twice."). As discussed above, the Supreme Court has not altered that fundamental tenet. *Booker*, 543 U.S. at 244.

For these reasons, Mr. Silva has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

## C.    Competency (Ground 2)

Mr. Silva argues that he is entitled to habeas relief because he was allowed to represent himself even though he was not competent. Dkt. No. 26 at 2. A criminal defendant may not waive his right to counsel "unless he does so 'competently and intelligently.'" *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)); *see also Williams v.*

*Woodford*, 384 F.3d 567, 603 (9th Cir. 2002) (explaining that "[d]ue process prohibits the criminal prosecution of a defendant who is not competent to stand trial").

In his objections, Mr. Silva contends that he is entitled to habeas relief because a state court judge improperly stated during a pretrial hearing, "So you can be incompetent and proceed pro se. There's U.S. Supreme Court law on that." Dkt. No. 26 at 1 (quoting Dkt. No. 14-1 at 268). However, as Judge Peterson explained, that "judge ultimately did not issue the final ruling on Petitioner's motion to proceed *pro se*." Dkt. No. 25 at 13. Instead, after a break, a new judge took up the motion, conducted a thorough colloquy with Mr. Silva, and concluded that Mr. Silva was making a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.* (citing Dkt. No. 14-1 at 286). There is no evidence that the first judge's remark influenced the second judge, nor was the remark the final determination of the issue. This does not entitle Mr. Silva to habeas relief.

Mr. Silva also argues that "if the state or the defense raises a competency issue the Court must order an evaluation." Dkt. No. 26 at 2. This is not the law. As Judge Peterson explained, "A state trial judge must conduct a competency hearing whenever the evidence before him raises a *bona fide* doubt about the defendant's competence to stand trial." Dkt. No. 25 at 11 (citing *Williams*, 384 F.3d at 603–04). "A bona fide doubt exists if there is substantial evidence of incompetence, or substantial evidence that the defendant lacks sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him." *Williams*, 384 F.3d at 604 (cleaned up). Mr. Silva argues that the prosecutor stated that she had concerns and directed the court to the arresting officer's statement of probable cause, which detailed Mr. Silva's schizophrenia diagnosis, delusions, irrational behaviors, and beliefs. Dkt. No. 26 at 2; *see* Dkt. No. 14-1 at 113–14. But the Court of Appeals explained that although Mr. Silva was off his medications and "undergoing a self-described psychotic break" when he committed the offenses, by the time he began court

1    proceedings, "he gave no signs nor exhibited any behaviors to questions [sic] his ability to

2    understand the proceedings or ability to represent himself. . . . Silva exhibited no irrational

3    behavior or conduct that would alert the court that a competency hearing was necessary." Dkt. No.

4    14-1 at 114–15. In addition, the trial court extensively questioned Mr. Silva about his ability to

5    proceed *pro se* and his understanding of what that would entail. *Id.* at 276–285. At the end of that

6    questioning, the trial court concluded that his waiver of the right to counsel was "knowing,

7    intelligent, and voluntary" and he "underst[ood] the charges and the consequences of [his] waiver."

8    *Id.* at 286. The trial court explained that it had "no reason to think [Mr. Silva was] not competent"

9    and he was "coming across as competent." *Id.* Under those circumstances, the trial court was not

10   required to hold a competency hearing, and Mr. Silva is not entitled to habeas relief on this ground.

11   **D.    Certificate of Appealability**

12          Mr. Silva objects to Judge Peterson's recommendation that the Court decline to issue a

13   certificate of appealability. Dkt. No. 25 at 15–16; Dkt. No. 26 at 1 (alleging that because he is

14   indigent, he cannot appeal to the Supreme Court without a certificate of appealability). A petitioner

15   seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal

16   habeas petition only after obtaining a certificate of appealability, which may issue only where a

17   petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C.

18   § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could

19   disagree with the district court's resolution of his constitutional claims or that jurists could

20   conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

21   *El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard and for the reasons set forth above,

22   the Court concludes that Mr. Silva is not entitled to a certificate of appealability.

23

24

1

### E.   Appointment of Counsel

2

3      In August 2022, Mr. Silva filed two motions requesting the appointment of counsel in this

4   matter. Dkt. Nos. 20, 21. The first motion requested counsel only if the Court chose not to strike

5   Mr. Silva's request for voluntary dismissal, Dkt. No. 16, but because the Court granted Mr. Silva's

6   motion to strike that request, Dkt. No. 19, Judge Peterson denied the first motion for counsel as

7   moot, Dkt. No. 22 at 2. Judge Peterson also denied Mr. Silva's second motion for appointment of

8   counsel, explaining:

9
> There is no right to have counsel appointed in cases brought under 28 U.S.C. § 2254
> unless an evidentiary hearing is required. *See Terravona v. Kincheloe*, 852 F.2d
> 424, 429 (9th Cir. 1988); Rule 8(c) of the Rules Governing Section 2254 Cases in
> the United States District Courts. However, the Court may exercise its discretion to
> appoint counsel for a financially eligible individual where the "interests of justice
> so require." 18 U.S.C. § 3006A.

10

11

12   *Id.* at 3. She explained that it did not appear that an evidentiary hearing would be required, and

13   that Mr. Silva had not demonstrated that the interests of justice required the appointment of

14   counsel. *Id.* Judge Peterson accurately observed that he had ably represented himself so far, and

15   because the briefing was complete on his habeas petition, appointment of counsel would serve no

16   purpose. *Id.*

17      Mr. Silva filed objections to Judge Peterson's order but did not object to her findings that

18   appointment of counsel was unwarranted. Instead, he continued to argue—as he had in his second

19   motion to appoint counsel—that prior filings should be redacted because they contain his private

20   mental health information. Dkt. No. 24 at 2 (arguing that leaving information regarding his mental

21   health issues and diagnosis unredacted in the public record "is inappropriate and a violation of

22   [HIPAA]"). But Mr. Silva did not identify which filings or specifically what information should

23   be redacted. *Id.* at 1 (stating that he wanted "all info on the record regarding his health information

24   redacted"). Nor it is obvious which records he thinks should be redacted. As Judge Peterson

explained, Mr. Silva "placed his mental health at issue in submitting his motion and, in fact, the record as a whole is replete with references to his mental health issues and diagnoses. Petitioner fails to demonstrate that redaction is either necessary or appropriate." Dkt. No. 22 at 4. The Court agrees. Sealing the entirety of the record is inconsistent with the public's right of access to the Court's files, and Mr. Silva has not provided compelling reasons to do so. *See* LCR 5(g) ("There is a strong presumption of public access to the court's files."); *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (holding that a party did not demonstrate compelling reasons to seal the entire court record).

The Court therefore overrules Mr. Silva's objections, Dkt. No. 24. However, the Court will provide him another opportunity to seek to redact portions of the record to the extent such redaction comports with applicable law. *See, e.g.*, Local Civil Rule 5(g), *available at* https://www.wawd.uscourts.gov/sites/wawd/files/WAWD%20All%20Local%20Civil%20Rules%20Clean%202022.pdf#%5B%7B%22num%22%3A36%2C%22gen%22%3A0%7D%2C%7B%22name%22%3A%22XYZ%22%7D%2C70%2C720%2C0%5D.

### III.   CONCLUSION

Having reviewed the Report and Recommendation, Mr. Silva's objections to it, and the remaining record, the Court

(1) ADOPTS the Report and Recommendation, Dkt. No. 25; and

(2) OVERRULES Mr. Silva's objections, Dkt. Nos. 24, 26.

Mr. Silva may file a motion to redact portions of the record no later than 30 days from the date of this Order (i.e., January 4, 2023). His motion—should he choose to file one—must identify the specific content he seeks to redact, identified by docket, page, and line number, and must also comply with Local Civil Rule 5(g), including its requirement that he explain (1) the legitimate

private or public interests that warrant the relief sought; (2) the injury that will result if the relief sought is not granted; and (3) why a less restrictive alternative to the relief sought is not sufficient.

The Clerk is directed to send uncertified copies of this Order to all counsel of record, to Mr. Silva at his last known address, and to Judge Peterson.

Dated this 5th day of December, 2022.

Lauren King
United States District Judge